UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| Glenn S. Millsaps, Jr.<br><br>verses<br><br>Sheriff Darren Campbell, in his official and capacity;<br>Sgt. Eric Seene, in his official capacity<br>Deputy Ron Hillard, in his individual capacity;<br>Attorney Adam Dillard, in his individual and capacity and<br>Unknown Defendant, in his or her individual capacity, (Reserved) | Case No. **5:25-cv-115-KDB-DCK**<br><br><br><br>**COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

This is a civil action seeking damages for violations of the United States Constitution.

The following facts form the basis of this claim:

# I. INTRODUCTION

Positioned as a beacon of transparency, entrusted with the power to protect and serve, the Iredell County Sheriff's Office wraps itself in the mantle of constitutional integrity. Sheriff Darren Campbell—on paper—proclaims a commitment to truth, oversight, and public trust. But the conduct that gives rise to this action speaks louder than press releases. What Campbell allowed to happen to Plaintiff is absolutely despicable. Through deliberate omissions, retaliatory framing, and systemic record distortion, Defendants have abandoned the principles they claim to uphold. Darren and the defendants do not practice what they preach. The destruction of evidence alleged herein is not a series of isolated

Page **1** of **31**

acts; it is clearly embedded within the operational DNA of the Iredell County Sheriff's Office, infecting its Public Records Access Division, Records Unit, and Criminal Investigations Bureau with systemic disregard for due process and transparency. This case doesn't just implicate rogue deputies—it unveils an unconstitutional architecture endorsed at the highest levels of command. The resulting harm to the Plaintiff is the natural and foreseeable consequence of entrenched customs, deliberate training failures, and record suppression policies ratified by final policymakers. If ever there were a blueprint for Monell liability, this is it. This particular civil rights action arises from newly unearthed evidence obtained on or about October 31, 2024, in *Millsaps v. Iredell County District Attorney's Office*, Case No. 5:22-cv-00095-KDB-DCK. That discovery revealed a calculated system of concealment within the Iredell County Sheriff's Office (ICSO)—a deliberate effort to evade federal oversight by suppressing traceable arrest records, falsifying evidence, and obstructing the judicial process. At the center of this horrifying scheme is Deputy Hillard's arrest statement, routed through an Administrative Originating Agency Identifier ("ORI")—a piece of evidence that unlocked the door to a far-reaching operation designed to conceal records implicating Hillard, Sgt. Eric Seene, ICSO Attorney Adam Dillard, and Sheriff Darren Campbell himself. On information and belief, the Plaintiff discovered that ICSO systematically routed arrest reports—particularly those involving African American individuals—into *Administrative ORI* classifications, rather than Criminal Investigative ORIs as required under FBI CJIS standards. This sleight-of-hand by ICSO officials effectively disabled automatic metadata generation, severed chain-of-custody protocols, and dismantled accountability mechanisms—thereby obstructing discovery, impeding audit trail verification, and

suppressing evidence favorable to the accused. These actions are embedded in ICSO's institutional practices and personally ratified by its highest officials.

Under *Brady v. Maryland*, 373 U.S. 83 (1963), Defendants had a constitutional obligation to disclose exculpatory evidence. Under *Giglio v. United States*, 405 U.S. 150 (1972), that duty extended to materials affecting the credibility of state witnesses. And under *Arizona v. Youngblood*, 488 U.S. 51 (1988), the destruction or concealment of potentially exculpatory digital evidence—particularly where surveillance video was manipulated or metadata stripped—constitutes a due process violation when done in bad faith. The Plaintiff alleges that ICSO's conduct satisfies each of these standards in full.

This Complaint is not a mere continuation of prior litigation—it is a constitutional escalation. The earlier malicious prosecution claim was dismissed *before* discovery of the ORI misclassification and associated digital suppression. This new action brings to light distinct and unlitigated constitutional violations that support fresh claims under *Thompson v. Clark*, 596 U.S. ___ (2022), including Fourth and Fourteenth Amendment injuries stemming from malicious prosecution, due process violations, supervisory misconduct, and racial discrimination under color of law.

The Plaintiff asserts that ICSO's use of Administrative ORI classifications—combined with coordinated misrepresentations, offsite report creation, and the concealment of metadata—constitutes a civil conspiracy designed to deny Black individuals access to justice and to insulate ICSO from federal civil rights accountability under 34 U.S.C. § 12601. The Plaintiff seeks compensatory and punitive damages, declaratory relief, and

injective remedies to restore transparency, reclassify records, and compel institutional reform.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the Plaintiff asserts claims arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

2. Jurisdiction is also proper under 28 U.S.C. § 1343(a)(3), which grants federal courts authority over civil rights actions seeking to redress the deprivation of constitutional rights under color of state law.

3. The Plaintiff further seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and attorneys' fees and costs under 42 U.S.C. § 1988.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in Iredell County, North Carolina, which lies within the Western District of North Carolina.

5. At all relevant times, Defendants acted under color of state law, and their conduct violated rights secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

## III. PARTIES

1. **Plaintiff Glenn S. Millsaps, Jr.** is a citizen of the United States and a resident of North Carolina. He is African America. He is a decorated United States Marine

Corps veteran and a pro se litigant who brings this action to vindicate his constitutional rights and expose systemic misconduct within the Iredell County Sheriff's Office.

2. **Defendant Deputy Ron Hillard** is, and was at all times relevant, a deputy employed by the Iredell County Sheriff's Office ("ICSO"). He is sued in his individual capacity for knowingly participating in the fabrication, suppression, and concealment of evidence, and for engaging in a civil conspiracy to violate the Plaintiff's constitutional rights under color of state law.

3. **Defendant Sgt. Eric Seene** is, and was at all times relevant, a supervisory officer employed by ICSO. He is sued in his individual capacity for his role in facilitating, acquiescing in, or failing to intervene in the concealment and misclassification of arrest-related records, and for deliberate indifference to the Plaintiff's constitutional rights.

4. **Defendant Attorney Adam Dillard** is the legal counsel for ICSO and its designated Public Records Officer. He is sued in both his individual and official capacities for knowingly issuing false public records responses, obstructing subpoena compliance, and participating in a coordinated effort to suppress exculpatory evidence in violation of the Plaintiff's constitutional rights.

5. **Defendant Sheriff Darren Campbell** is the elected Sheriff of Iredell County and the final policymaker responsible for ICSO's operations, training, supervision, and evidentiary protocols. He is sued in both his individual and official capacities. In his individual capacity, Campbell is liable for personal involvement in the concealment of evidence and failure to train subordinates. In his official

capacity, Campbell is sued as the representative of ICSO, which participates in a local government risk pool under N.C. Gen. Stat. § 153A-435. This participation constitutes a waiver of governmental immunity for covered conduct, including constitutional violations alleged herein.

## IV. STATEMENT OF FACTS

1. On or about July 24, 2019, Deputy Hillard arrested the Plaintiff Glenn S. Millsaps, Jr. and later asserted that he drafted the arrest report at home.

2. Deputy Hillard testified that he provided his arrest report to Sgt. Eric Seene, who served as his direct supervisor.

3. The arrest statement submitted by Deputy Hillard during discovery lacked essential metadata attributes. Specifically, it contained no digital timestamp, no recorded date of entry into the ORI system, no identification or login credentials of the individual who entered the data, and no signature or attribution confirming authorship. These omissions undermined metadata tracking, chain-of-custody integrity, and audit trail verification—each of which is critical to establishing the authenticity and reliability of arrest-related documentation under FBI CJIS protocols.

4. On or about July 24, 2019, Sgt. Seene arrived at the scene at approximately 8:40 a.m.—contemporaneous with the arrest. On information and belief, Sgt. Seene had direct access to ICSO's secured surveillance archive, including the room housing the video recording system used to document the incident. Despite this

Page **6** of **31**

access, Seene failed to preserve, log, or produce the original video file. Instead, ICSO submitted a version of the surveillance footage that was edited, reformatted, and stripped of key metadata—including timestamps and chain-of-custody markers. Seene's failure to intervene, escalate, or correct these evidentiary omissions constituted supervisory ratification of constitutional misconduct and facilitated the concealment of exculpatory material in violation of Brady, Giglio, and Youngblood.

5. Upon information and belief, Sheriff Darren Campbell and the named Defendants were aware that the Plaintiff's July 24, 2019 arrest lacked probable cause, as the Plaintiff was standing outside the District Attorney's Office prior to any lawful basis for seizure. The arrest occurred at approximately 8:40 a.m., after the Plaintiff arrived around 8:30 a.m., a timeline corroborated by the contemporaneous report of Kathleen Burris and a Statesville Police Department independent timestamp report.   However, Defendants submitted a manipulated video depicting the arrest as occurring inside the DA's lobby at 8:15 a.m.—a full fifteen minutes before the Plaintiff's documented arrival. By failing to properly upload and code the video in accordance with CJIS reporting protocols, Defendants were able to withhold the original video from metadata tracking and present a retrofitted version designed to fabricate probable cause. Defendants further coordinated a retroactive effort to justify the arrest by submitting unformatted, non-CJIS-coded reports, manipulating key evidence, and concealing exculpatory material to obstruct prosecutorial review and prevent metadata traceability.

6. Defendant Hillard prepared his arrest report at home, outside ICSO's secure documentation environment and without supervisory review, in violation of standard reporting protocols that require contemporaneous, CJIS-compliant entries. This deviation obstructed metadata traceability and undermined the integrity of the arrest record.

7. Defendant Hillard materially altered his arrest report and submitted an untraceable version into the criminal trial, despite knowing that the prosecution lacked probable cause.

8. On information and belief, the Plaintiff has learned through reasonable inquiry the Federal Bureau of Investigation's Initial Processing Operations Unit, Record/Information Dissemination Section has no record pertaining to the Plaintiff's **July 24, 2019 arrest** by the Iredell County Sheriff's Office.

9. However, Attorney Adam Dillard in a public records request told the Plaintiff ICSO had a criminal investigative file.

10. Defendant Adam Dillard, acting as Sheriff's Counsel and designated Public Records Officer, knowingly misrepresented the existence of a criminal investigative file in response to the Plaintiff's lawful records requests. On information and belief, Dillard was fully aware that ICSO had not created or classified any such file under a valid Criminal Investigative ORI, and that the arrest-related materials were routed through an Administrative ORI to obstruct metadata tracking, suppress exculpatory evidence, and evade federal reporting protocols.

11. The absence of such a record suggests that ICSO failed to properly classify and code evidence relating to the July 24, 2019 arrest under a valid Record and/or Criminal Investigative ORI code with the intent to by-pass federal and state case tracking systems and obstructing metadata preservation.

12. Defendants knew that coding the July 24, 2019 arrest-related evidence under an Administrative ORI would prevent auto-generation of a case number and thereby obstruct metadata tracking essential for audit trails and chain-of-custody.

13. Defendants were aware that the Plaintiff's July 24, 2019 arrest lacked probable cause. Yet they failed to provide the Iredell County District Attorney's Office with a complete and unaltered copy of the arrest video, and instead submitted unformatted, non-CJIS-coded versions of key reports—including those authored by Deputy Hillard, Danny Liles, and Kathleen Burris—thereby obstructing prosecutorial review and concealing exculpatory evidence.

14. The Plaintiff was peacefully attempting to resolve a missed court date and was physically located outside the District Attorney's Office, as confirmed by eyewitness accounts and contemporaneous reports.

15. Defendant Hillard later claimed under oath that the arrest occurred inside the District Attorney's Office at 8:15 a.m., a timeline inconsistent with:

    a. Hillard's own contemporaneous report, which listed the time of arrest as 8:40 a.m.

    b. Surveillance video later disclosed, which omitted several key moments, including a verbal exchange lasting nearly two minutes

    c. Reports from Danny Liles, Kathleen Burris, and Officer Johnson, all corroborating the Plaintiff's location and timeline

16. On or about November 2021, the Plaintiff was found not guilty in *State of North Carolina v. Glenn S. Millsaps, Jr.*, Case No. 19-CRS-53783, in Iredell County District Court. This acquittal constitutes a favorable termination under *Thompson v. Clark*, forming the basis of the Plaintiff's malicious prosecution claim.

17. Between 2019 and 2024, the Plaintiff submitted multiple public records requests and subpoenas to the Iredell County Sheriff's Office (ICSO) seeking:

    a. The original surveillance video of his arrest

    b. Hillard's arrest report

    c. Radio communications

    d. Reports authored by involved personnel, including Liles and Burris

18. In response, Defendant Attorney Adam Dillard, ICSO's legal counsel and Public Records Officer:

    a. Falsely claimed ICSO maintained no responsive records

    b. Asserted, falsely, that the materials were part of a criminal investigative file, exempt under N.C. Gen. Stat. § 132-1.4

    c. Deliberately did not file a motion to quash the Plaintiff's subpoena, but instead issued an informal letter denying the existence of records

19. On or about February 2020, Defendant Adam Dillard falsely informed the Plaintiff that ICSO maintained no responsive records related to Deputy Hillard's arrest because the incident occurred within the city limits of Statesville, North Carolina.

20. On information and belief, Sheriff Darren Campbell instructed ICSO Attorney Adam Dillard to mislead the Plaintiff by asserting that the Iredell County Sheriff's Office maintained no records related to the July 24, 2019 arrest, based on the claim that the incident occurred within the city limits of Statesville and therefore fell outside Campbell's jurisdiction. This misrepresentation appears calculated to conceal that ICSO failed to properly code the arrest under FBI CJIS protocols, thereby avoiding metadata preservation and obstructing the Plaintiff's access to traceable records.

21. This misrepresentation was intended to prevent the Plaintiff from filing a Petition for the Record in state court and was made with knowledge that the justification was legally invalid.

22. Campbell knew—and failed to train Adam Dillard—that under North Carolina General Statute § 15A-402(b), sheriff's deputies have county-wide arrest authority, which includes jurisdiction within incorporated municipalities such as Statesville.

23. On or about October 31, 2024, during federal discovery in Case No. *5:22-cv-00095-KDB-DCK*, the Plaintiff discovered for the first time that:

    a. Hillard's arrest report had been classified under an Administrative ORI code (NC0490000) rather than a Criminal Investigative ORI where it was mandated to be reported

    b. This classification prevented the assignment of a case number, disabled metadata retention, and severed the report from standard evidentiary tracking systems

c. The original surveillance video file had not been preserved, and the version produced lacked timestamps, chain-of-custody markers, and was formatted in a suspicious resolution (16:9), inconsistent with ICSO's recording system

24. On information and belief, the recording system recorded in a 4:3 aspect ratio. The video Plaintiff received was in a 16:9 aspect ratio.

25. On information and belief, the recording system that recorded the July 2019 arrest was replaced on or about early 2020.

26. On information and belief there are no maintenance records showing the system was in need of repair or replacement.

27. Despite clear CJIS certification requirements, Sheriff Campbell knowingly permitted uncertified personnel to access and manipulate CJIS-coded records, resulting in the concealment of material evidence from the Plaintiff.

28. The Plaintiff further uncovered that Defendant Sgt. Eric Seene received and routed Hillard's report through the Administrative ORI system, despite its investigative nature, and failed to log or classify the record properly. Seene took no remedial action despite knowing the report was created offsite and lacked proper documentation.

29. The Plaintiff submitted direct complaints to Sheriff Darren Campbell, who:

a. Referred the matter back to Dillard

b. Took no steps to audit ORI classifications or investigate record suppression

    c.   Failed to train Dillard, Seene, or Hillard on proper report handling, metadata retention, and Brady disclosure obligations

30. Upon information and belief, ICSO has a pattern and practice of routing arrest records involving Black individuals into Administrative ORI systems, obstructing public accountability and federal reporting requirements, and disproportionately impacting Black litigants like the Plaintiff.

31. The Plaintiff asserts that the combination of misclassification, false testimony, and obstruction of digital evidence resulted in:

    a.   The denial of access to exculpatory and impeachment materials

    b.   Prolonged litigation and reputational harm

    c.   A violation of the Plaintiff's rights under the Fourth and Fourteenth Amendments

## V. LEGAL CLAIMS

## Count I: Malicious Prosecution and Due Process Violations – Deputy Ron Hillard (Individual Capacity)

The Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

Defendant Deputy Ron Hillard, acting under color of state law and in his individual capacity, is liable under 42 U.S.C. § 1983 for violating the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

A. Fourth Amendment – Malicious Prosecution

On or about July 24, 2019, Defendant Hillard, acting under color of state law, initiated criminal proceedings against the Plaintiff without probable cause. He intentionally circumvented ICSO reporting protocols by writing his report offsite, submitted unformatted and untraceable arrest documentation, and materially altered both his report and testimony surrounding an unauthenticated video. Hillard further manipulated the arrest timeline to support prosecution in *State of North Carolina v. Glenn S. Millsaps, Jr.*, Case No. 19-CRS-53783. On or about November 2021, the Plaintiff was found not guilty in Iredell County District Court. This acquittal constitutes a favorable termination under *Thompson v. Clark*, 596 U.S. ___ (2022), which holds that a § 1983 malicious prosecution claim under the Fourth Amendment requires only that the criminal case end without a conviction.

Hillard's conduct included:

   a. Drafting an offsite arrest report that lacked metadata, timestamps, and chain-of-custody safeguards.

   b. Participating in the misclassification of the arrest report under an Administrative ORI code, severing it from criminal case tracking systems.

   c. Providing false and evolving testimony tailored to align with a selectively edited surveillance video.

   d. Benefiting from the concealment and destruction of exculpatory evidence, including original video files, radio logs, and contemporaneous reports.

These actions constituted an unreasonable seizure and a malicious prosecution in violation of the Fourth Amendment.

## B. Fourteenth Amendment – Due Process Violations

Hillard's conduct also violated the Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment. Specifically:

a. The misclassification of arrest records under an Administrative ORI deprived the Plaintiff of access to exculpatory evidence, audit trails, and metadata necessary to challenge the prosecution.

b. Hillard's offsite report writing and coordination with ICSO officials obstructed the Plaintiff's ability to obtain records through lawful subpoenas and public records requests.

c. The concealment of the original surveillance video and destruction of digital evidence constituted a violation of the standard articulated in *Brady v. Maryland*, 373 U.S. 83 (1963), which requires disclosure of evidence favorable to the accused when material to guilt or punishment.

d. Hillard's evolving testimony and reliance on altered evidence undermined the integrity of the trial, violating the rule in *Giglio v. United States*, 405 U.S. 150 (1972), which extends *Brady* to include impeachment evidence affecting witness credibility.

e. The failure to preserve original video files, metadata, and radio logs—despite their known relevance—violated the principle in *Arizona v. Youngblood*, 488 U.S. 51 (1988), which holds that destruction of potentially exculpatory evidence violates due process when done in bad faith.

These actions were not isolated errors but part of a deliberate pattern of misconduct designed to suppress evidence, mislead the court, and deprive the Plaintiff of a fair legal process.

C. Damages

As a direct and proximate result of Hillard's conduct, the Plaintiff suffered:

a. Unlawful detention

b. Loss of liberty

c. Denial of access to exculpatory evidence

d. Reputational harm

e. Emotional distress and humiliation

Hillard's actions were intentional, malicious, and carried out with reckless disregard for the Plaintiff's constitutional rights.

The Plaintiff seeks compensatory and punitive damages, as well as declaratory relief holding that Hillard's actions violated the Fourth and Fourteenth Amendments. As a direct result of Defendant Hillard's malicious prosecution and concealment of exculpatory evidence, the Plaintiff suffered severe emotional distress, including anxiety, humiliation, and disruption of daily life.

**Count II: Supervisory Liability and Constitutional Violations – Sgt. Eric Seene (Individual Capacity)**

The Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

Defendant Sgt. Eric Seene, acting under color of state law and in his individual capacity, is liable under 42 U.S.C. § 1983 for violating the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

A. Supervisory Liability – Deliberate Indifference and Causal Connection

As Hillard's direct supervisor, Seene:

a. Knowingly permitted Hillard to draft his arrest report offsite, outside ICSO's standard documentation protocols, resulting in a report devoid of metadata, timestamps, and chain-of-custody safeguards.

b. Accepted and routed the report through ICSO's Administrative ORI system, despite its investigative nature, thereby severing it from criminal case tracking systems and obstructing judicial review.

c. Failed to document, log, or escalate the report for proper classification, despite knowing its relevance to an active criminal prosecution.

d. Acquiesced in the concealment of exculpatory evidence, including surveillance video, radio logs, and contemporaneous reports authored by Hillard, Liles, and Burris.

e. Took no corrective action despite the Plaintiff's direct complaints and the obvious procedural irregularities surrounding the arrest and evidence handling.

These actions reflect a reckless and callous indifference to the Plaintiff's constitutional rights, satisfying the Fourth Circuit's standard for supervisory liability, which requires:

a. That the supervisor had actual or constructive knowledge of the subordinate's unconstitutional conduct;

b. That the supervisor's response was so inadequate as to show deliberate indifference or tacit authorization;

c. And that there was an affirmative causal link between the supervisor's inaction and the constitutional injury (*see Wilkins v. Montgomery*, 751 F.3d 214, 226–27 (4th Cir. 2014); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

B. Fourteenth Amendment – Due Process Violations

Seene's supervisory failures directly contributed to:

a. The misclassification of arrest records under an Administrative ORI, obstructing the Plaintiff's access to exculpatory evidence.

b. The concealment of critical documents, including reports submitted by Hillard and Liles, which were never logged, timestamped, or preserved.

c. The destruction or suppression of radio communications and surveillance metadata, violating the Plaintiff's right to a fair trial under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Arizona v. Youngblood*, 488 U.S. 51 (1988).

Seene's conduct was not passive—it was affirmative supervisory misconduct that enabled and perpetuated the constitutional violations.

C. Damages

As a direct and proximate result of Seene's actions and omissions, the Plaintiff suffered:

a. Denial of access to exculpatory evidence

b. Obstruction of judicial process

c. Reputational harm

d. Emotional distress and humiliation

The Plaintiff seeks compensatory and punitive damages, as well as declaratory relief holding that Seene's supervisory conduct violated the Fourth and Fourteenth Amendments.

**Count III: Obstruction of Judicial Process and Due Process Violations – Attorney Adam Dillard (Individual and Official Capacities)**

The Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

Defendant Attorney Adam Dillard, acting under color of state law and in both his individual and official capacities, is liable under 42 U.S.C. § 1983 for violating the Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

A. Obstruction and Misrepresentation Under Color of Law

As ICSO's legal counsel and designated Public Records Officer, Dillard:

a.   Knowingly issued false responses to the Plaintiff's lawful public records requests,
     stating that ICSO maintained no records related to the Plaintiff's arrest, despite
     the existence of surveillance video, arrest reports, and internal communications.

b.   Falsely represented that the records were part of a criminal investigative file,
     invoking N.C. Gen. Stat. § 132-1.4 to deny access—while knowing the records
     had been coded under an Administrative ORI, which stripped them of metadata
     and severed them from criminal case tracking systems.

c.   Obstructed a valid state subpoena issued on or about May 2020, by refusing to file
     a proper motion to quash under Rule 45(c)(5) of the North Carolina Rules of Civil
     Procedure. Instead, Dillard issued an informal letter falsely asserting that ICSO
     had no responsive records.

d.   Acted in concert with ICSO officials, including Sheriff Campbell and Sgt. Seene,
     to suppress exculpatory evidence and prevent judicial oversight.

These actions were not procedural missteps—they were deliberate acts of concealment
designed to mislead a pro se litigant and protect ICSO from accountability.

B. Fourteenth Amendment – Due Process Violations

Dillard's conduct violated the Plaintiff's procedural due process rights by:

a.   Suppressing exculpatory evidence material to the Plaintiff's defense, in violation
     of *Brady v. Maryland*, 373 U.S. 83 (1963).

b. Obstructing access to impeachment evidence, including metadata and chain-of-custody documentation, in violation of *Giglio v. United States*, 405 U.S. 150 (1972).

c. Participating in the destruction or concealment of digital evidence, including original surveillance files and radio logs, in violation of *Arizona v. Youngblood*, 488 U.S. 51 (1988).

Dillard's misrepresentations were made in his official role as ICSO's Public Records Officer, and his conduct reflects a pattern of strategic obstruction that deprived the Plaintiff of a fair opportunity to challenge the prosecution.

C. Damages

As a direct and proximate result of Dillard's conduct, the Plaintiff suffered:

a. Denial of access to exculpatory and impeachment evidence

b. Obstruction of judicial process

c. Reputational harm

d. Emotional distress and humiliation

The Plaintiff seeks compensatory and punitive damages, as well as declaratory relief holding that Dillard's actions violated the Fourteenth Amendment.

**Count IV: Monell Liability – Sheriff Darren Campbell (Official Capacity)**

The Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

Page **21** of **31**

Defendant Sheriff Darren Campbell, sued in his official capacity as the final policymaker for the Iredell County Sheriff's Office (ICSO), is liable under 42 U.S.C. § 1983 for maintaining unconstitutional policies, customs, and practices that violated the Plaintiff's rights under the Fourth and Fourteenth Amendments.

A. Monell Framework

Under *Monell*, a local government entity may be held liable for constitutional violations caused by:

a. An official policy or directive;

b. A widespread and well-settled custom;

c. A failure to train or supervise amounting to deliberate indifference;

d. An act or ratification by a final policymaker.

Sheriff Campbell, as the elected head of ICSO, qualifies as a final policymaker under Fourth Circuit precedent (*see Spell v. McDaniel*, 824 F.2d 1380, 1387–88 (4th Cir. 1987)).

B. Unconstitutional Policies and Customs

Campbell maintained or ratified the following unconstitutional practices:

a. Systematic misuse of Administrative ORI coding to conceal arrest records, suppress metadata, and evade federal reporting obligations;

b. Absence of digital evidence retention protocols, allowing destruction or manipulation of surveillance video and radio logs;

c. Delegation of subpoena compliance and public records responses to untrained personnel, resulting in false denials and obstruction;

d. Failure to discipline or correct subordinates who fabricated reports, altered timelines, and misrepresented evidence;

e. Disproportionate routing of Black arrestees' records into non-investigative ORI systems, obstructing accountability and equal protection.

These practices were widespread, persistent, and tolerated, and Campbell either authorized, ratified, or deliberately ignored them.

## C. Deliberate Indifference and Causation

Campbell's inaction and policy failures reflect deliberate indifference to the known consequences of ICSO's evidentiary misconduct. His failure to implement safeguards, train personnel, or audit ORI classifications was the moving force behind the constitutional injuries suffered by the Plaintiff (*see City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Board of County Comm'rs v. Brown*, 520 U.S. 397, 407–08 (1997)).

## D. Sovereign Immunity Waiver

ICSO participates in a local government risk pool under N.C. Gen. Stat. § 153A-435, which constitutes a waiver of governmental immunity for covered conduct. Accordingly, Campbell's official capacity is actionable under *Monell*, and no Eleventh Amendment immunity applies (*see Kitchen v. Upshaw*, 286 F.3d 179, 184 (4th Cir. 2002)).

## E. Damages

As a direct and proximate result of ICSO's unconstitutional policies and customs, the Plaintiff suffered:

    a. Denial of access to exculpatory evidence

    b. Obstruction of judicial process

    c. Reputational harm

    d. Emotional distress and humiliation

The Plaintiff seeks compensatory damages, declaratory relief, and injunctive relief requiring ICSO to audit and reclassify improperly coded records, implement metadata retention protocols, and cease the use of Administrative ORI systems to conceal criminal case materials.

## Count V: Failure to Train, Supervise, and Constitutional Violations – Sheriff Darren Campbell (Individual Capacity)

The Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

Defendant Sheriff Darren Campbell, acting under color of state law and in his individual capacity, is liable under 42 U.S.C. § 1983 for violating the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

A. Personal Involvement and Supervisory Misconduct

As the elected Sheriff and final policymaker for ICSO, Campbell:

a. Personally authorized or ratified the use of Administrative ORI coding to conceal arrest records and suppress metadata.

b. Delegated subpoena compliance and public records responses to Attorney Adam Dillard without providing training on lawful procedures, resulting in false denials and obstruction.

c. Failed to implement or enforce protocols for digital evidence retention, chain-of-custody tracking, and metadata preservation.

d. Ignored direct complaints from the Plaintiff regarding misconduct and concealment, despite having actual knowledge of the underlying events.

e. Took no corrective action when subordinates fabricated reports, altered timelines, and misrepresented evidence in judicial proceedings.

These actions reflect personal involvement and supervisory liability, satisfying the Fourth Circuit's standard for individual capacity claims (*see Wilkins v. Montgomery*, 751 F.3d 214, 226–27 (4th Cir. 2014); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

B. Failure to Train – Deliberate Indifference

Campbell's failure to train ICSO personnel—including Dillard, Hillard, and Seene—amounts to deliberate indifference under *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Specifically:

a. Campbell knew to a moral certainty that ICSO personnel would be required to respond to subpoenas, retain digital evidence, and classify arrest records under FBI CJIS standards.

b. Despite this, Campbell provided no training or oversight on:

   1. Proper ORI classification for criminal case materials;

   2. Metadata retention and digital chain-of-custody protocols;

   3. Lawful compliance with subpoenas and public records laws;

   4. Disclosure obligations under *Brady* and *Giglio*.

This failure created a predictable and obvious risk of constitutional violations, satisfying the deliberate indifference standard articulated in *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011).

The Plaintiff further alleges, in the alternative, that Defendants' actions constitute a violation of the Equal Protection Clause under a "class of one" theory. The Plaintiff was intentionally singled out for irrational and disparate treatment—specifically, the routing of his arrest materials through an Administrative ORI, suppression of exculpatory evidence, and denial of access to metadata and chain-of-custody documentation—without any rational basis and contrary to standard ICSO procedures.

This differential treatment was the result of an official policy, widespread custom, or ratification by ICSO's final policymaker, Sheriff Darren Campbell. The use of Administrative ORI coding and off-grid reporting mechanisms reflects an institutional practice or approved deviation from standard criminal processing procedures, constituting municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)

C. Damages

As a direct and proximate result of Campbell's personal misconduct and failure to train, the Plaintiff suffered:

a. Denial of access to exculpatory evidence

b. Obstruction of judicial process

c. Reputational harm

d. Emotional distress and humiliation

The Plaintiff seeks compensatory and punitive damages, as well as declaratory relief holding that Campbell's individual conduct violated the Fourth and Fourteenth Amendments.

## Count VI: Violation of Equal Protection Clause – Sheriff Darren Campbell (Official Capacity)

The Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

Defendant Sheriff Darren Campbell, in his official capacity as the final policymaker for the Iredell County Sheriff's Office (ICSO), is liable under 42 U.S.C. § 1983 for maintaining unconstitutional policies and customs that violated the Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

At all relevant times, ICSO operated under policies and customs that enabled the discriminatory treatment of the Plaintiff, an African American veteran and pro se litigant, by:

a. Routing his arrest records into an Administrative ORI classification not intended for criminal investigative matters;

b. Suppressing standard metadata, timestamps, and chain-of-custody features required under FBI CJIS protocols;

c. Obstructing the Plaintiff's access to exculpatory evidence and denying him equal treatment in the criminal justice process;

d. Failing to retain, disclose, or submit properly formatted surveillance footage or related documentation.

The Plaintiff alleges, on information and belief, that these actions were motivated at least in part by racial animus and/or the intent to treat the Plaintiff differently from similarly situated white arrestees or represented litigants. The procedural irregularities in the Plaintiff's case—such as the use of non-CJIS report formats, offsite report writing, video manipulation, and falsified jurisdictional justifications—reflect a departure from standard ICSO procedures and are probative of discriminatory intent.

Even if the Plaintiff was the first or only known victim of this conduct, the Equal Protection Clause prohibits racially motivated discrimination regardless of its frequency or scope. Discriminatory intent may be inferred from the cumulative circumstances surrounding the Plaintiff's arrest, record handling, and the coordinated cover-up by ICSO officials.

No rational basis exists for treating the Plaintiff's arrest differently from other arrests that are routinely coded, timestamped, preserved, and disclosed pursuant to state and federal guidelines. The selective use of Administrative ORI designations to block traceability and

suppress criminal case materials constitutes intentional differential treatment without a legitimate governmental purpose.

Defendant Campbell, as the final policymaker for ICSO, maintained, ratified, or failed to correct these discriminatory practices and thus bears Monell liability for the resulting constitutional violations.

## Relief Requested for Count VI

The Plaintiff seeks:

a. A declaratory judgment that ICSO's actions violated the Equal Protection Clause of the Fourteenth Amendment;

b. Compensatory damages for harm suffered as a result of racially discriminatory treatment;

c. Injunctive relief requiring ICSO to:

    1. Conduct an audit of Administrative ORI usage;

    2. Reclassify improperly coded records;

    3. Implement training to prevent racially discriminatory classification practices;

d. Any other relief this Court deems just and proper.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

1. Enter judgment in favor of the Plaintiff and against all Defendants on all counts;

2. Declare that Defendants violated the Plaintiff's rights under the Fourth and Fourteenth Amendments, and that their acts constituted malicious prosecution, due process violations, and supervisory misconduct under 42 U.S.C. § 1983;

3. Award compensatory damages in an amount to be determined at trial, including for:

   a. Unlawful arrest and detention

   b. Emotional distress and reputational harm

   c. Litigation expenses and lost time pursuing suppressed evidence

4. Award punitive damages against Defendants Hillard, Seene, Dillard, and Campbell (individual capacities) for their intentional, malicious, and reckless conduct;

5. Enter injunctive relief requiring ICSO to:

   a. Reclassify the Plaintiff's July 24, 2019 arrest records under the proper Criminal Investigative ORI, consistent with FBI CJIS standards;

   b. Conduct a full audit of Administrative ORI records, identify misclassified investigative materials, and reclassify them appropriately;

   c. Implement training protocols on ORI classification, public records law, subpoena compliance, and digital evidence retention;

   d. Establish chain-of-custody procedures for video, radio, and metadata associated with arrest activity;

6. Award attorney's fees and costs under 42 U.S.C. § 1988, if the Plaintiff secures counsel, or alternatively award litigation costs to the Plaintiff as a pro se litigant;

7.  Direct that a portion of any punitive award be allocated toward creating an independent oversight board to monitor evidentiary practices and public accountability within ICSO;

8.  Grant all other relief this Court deems just, equitable, and proper.

The Plaintiff seeks compensatory and punitive damages from Defendants Hillard, Seene, Dillard, and Campbell in their individual capacities, and injunctive and declaratory relief from Defendant Campbell in his official capacity

Respectfully,

/s/Glenn S. Millsaps, Jr.